[No. D004678. Fourth Dist., Div. One. Sept. 17, 1987.]

CASCADE GARDENS HOMEOWNERS ASSOCIATION, Plaintiff and Appellant, v.
McKELLAR & ASSOCIATES, Defendant and Respondent.

COUNSEL

Duke, Gerstel, Shearer & Bregante, Anne M. Braudis, Andrew F. Lloyd and J. Michael Reed for Plaintiff and Appellant.

Gray, Cary, Ames & Frye, Brian L. Forbes and Charles L. Deem for Defendant and Respondent.

OPINION

**TODD, J.**—Cascade Gardens Homeowners Association (Cascade) appeals an order granting summary judgment in favor of McKellar & Associates (McKellar).

Cascade contends the trial court erred since (1) evidence of estoppel was not negated; (2) the allegations of willful and fraudulent conduct rendered the statute of limitations defense inapplicable to the present case; and (3) the repairs constituted an improvement within the meaning of Code of Civil Procedure[1] section 337.15 and thus the action is not barred.

Cascade correctly states the rule that repairs toll the statute of limitations, but erroneously included this rule in its estoppel argument. However, since the undisputed facts show McKellar undertook roof repairs between January 1974 and April 1974, we hold the statute of limitations was tolled during those four months. Therefore, Cascade's complaint was filed within the statutory period, and we reverse the summary judgment.

## FACTS AND PROCEDURAL BACKGROUND

In approximately 1972 and 1973, McKellar developed the Cascade Gardens Condominiums and filed its notice of completion on July 13, 1973. Soon after the homeowners moved into the condominiums, Cascade notified McKellar of roof leaks, as well as other defects. In a letter dated November 20, 1973, McKellar promised to correct the roof leaks to prevent any reoccurence. Pursuant to this promise, McKellar contracted with Hutchison Roofing Co. (Hutchison) to perform the reroofing. On January 16, 1974, McKellar wrote a letter notifying Cascade that Hutchison had commenced repairs on the new roof, explicitly guaranteeing it for 10 years with no conditions. McKellar sent Cascade a final letter on April 4, 1974, extolling

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

the quality of the new roof and indicating that the repairs were nearly completed.[2] The repairs required approximately four months of work until completion.

In the early 1980's, the roofs began to leak again. Cascade claims it notified McKellar of the leaks and requested restoration, but McKellar refused. On August 12, 1983, Cascade filed a complaint against McKellar for defective construction and supervision, and the resulting property damage. In November 1984, Cascade amended the complaint, asserting that McKellar was estopped from relying on a statute of limitations defense. Cascade based its estoppel theory upon McKellar's conduct and representations, which Cascade detrimentally relied on by failing to bring suit within the statutorily prescribed time period.

McKellar filed a motion for summary judgment asserting the 10-year statute of limitations set forth in section 337.15. On March 3, 1986, the trial court found no evidence of estoppel and granted McKellar's motion for summary judgment.

### DISCUSSION

█ The purpose of a summary judgment motion is to determine if there are any triable issues of material fact, or whether the moving party is entitled to judgment as a matter of law. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177].) The summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. (*Stationers Corp.* v. *Dun & Bradstreet, Inc., supra,* 62 Cal.2d at p. 417.) The affidavits of the moving party are strictly construed, while those of the party opposing the motion are liberally construed. (*Miller* v. *Bechtel, supra,* 33 Cal.3d at p. 874; *Stationers Corp.* v. *Dun & Bradstreet, Inc., supra,* 62 Cal.2d at p. 417.) If the affidavits of the party opposing the motion contain factual averments within the general area of the issues framed by the pleadings, they are sufficient to make out a prima facie case. (*Stalnaker* v. *Boeing Co.* (1986) 186 Cal.App.3d 1291, 1297 [231 Cal.Rptr. 323].) Any doubts as to

---

[2] Regarding McKellar's objection to the declaration of Jinger Wheaton (with the three McKellar letters incorporated therein), we find no error in the ruling of the trial court. While paragraph five of the Wheaton declaration is somewhat inconsistent with paragraphs one through four therein, the earlier paragraphs provide a proper foundation for the receipt of the declaration and the letters.

the propriety of granting the motion must be resolved in favor of the party opposing the motion. *(Miller* v. *Bechtel, supra,* 33 Cal.3d at p. 874; *Stationers Corp.* v. *Dun & Bradstreet, Inc., supra,* 62 Cal.2d at p. 417.)

In the instant case, McKellar relied upon section 337.15 as a complete defense to the claims brought by Cascade. Section 337.15 is a 10-year statute of limitations barring damage actions against developers of real property brought for latent deficiencies or property damage. *(Barnhouse* v. *City of Pinole* (1982) 133 Cal.App.3d 171, 186 [183 Cal.Rptr. 881].)
■ The purpose of the statute is to prevent liability of indefinite duration from impinging on the work of contractors and developers. (See *Regents of University of California* v. *Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 633, fn. 2 [147 Cal.Rptr. 486, 581 P.2d 197].) On its face, Cascade's action appears to be barred by the statute of limitations since it filed its complaint 10 years and 1 month after the date of substantial completion of the condominium project.[3] (§ 337.15.)

McKellar filed its notice of completion on July 13, 1973, but Cascade did not bring its action until August 12, 1983, which was one month too late. ■ However, statutes of limitations are not so rigid that under certain circumstances principles of equity and justice will not allow them to be extended. *(Kleinecke* v. *Montecito Water Dist.* (1983) 147 Cal.App.3d 240, 247 [195 Cal.Rptr. 58].) Since section 337.15 is an ordinary statute of limitations *(Regents of University of California* v. *Hartford Acc. & Indem. Co., supra,* 21 Cal.3d at p. 642), it is subject to the same rules which toll other statutes of limitations. Thus, any event which tolls the limitation period contained in section 337.15 will effectively extend the statutory period for the amount of time it was tolled.

■ The dispositive issue is whether the statute of limitations set forth by section 337.15 was tolled or suspended during this "period of repair." Clear authority establishes that repairs, such as those undertaken by McKellar and Hutchison, toll statutes of limitations as a matter of law. *(Mack* v. *Hugh W. Comstock Associates* (1964) 225 Cal.App.2d 583, 589-590 [37 Cal.Rptr. 466]; *Aced* v. *Hobbs-Sesack Plumbing Co.* (1961) 55 Cal.2d 573, 585 [12 Cal.Rptr. 257, 360 P.2d 897]; *Southern Cal. Enterprises* v. *Walter & Co.* (1947) 78 Cal.App.2d 750, 755 [178 P.2d 785].)

---

[3] The 10-year period specified in subdivision (a) commences upon substantial completion of the improvement, but not later than the date of one of the following, whichever first occurs: (1) The date of final inspection by the applicable public agency, (2) *the date of recordation of a valid notice of completion,* (3) the date of use or occupation of the improvement, (4) one year after termination or cessation of work on the improvement. (§ 337.15, italics added.)

The facts in *Mack* v. *Hugh W. Comstock Associates, supra,* 225 Cal.App.2d at pages 585-586, are remarkably similar to the present case. In *Mack,* the plaintiffs contracted to have a home built by Comstock, a general contractor, and Comstock in turn secured a subcontractor to install a heating system. The heating system developed leaks on numerous occasions. On each occasion Comstock and the subcontractor attempted to repair the leaks. Eventually the plaintiffs sued for damages. Comstock and the subcontractor relied on a statute of limitations defense. (*Ibid.*)

In tolling the statute of limitations during each period of repair, the court in *Mack* observed: "The respondents had the duty to provide a radiant heating system fit for the purpose for which it was intended and the appellants had a right to rely thereon [citation]. . . .

"Respondents concede that when a product is built into a home with an express or implied warranty against defects of workmanship for a specific period of time and the product proves defective and not in conformity to the warranty, the warranty is 'prospective' and the statute of limitations is tolled during the time the seller honestly endeavors to make repairs to enable the product to fit the warranty or at least until such time as it becomes reasonably apparent to the owner that the warranty cannot be met [citations]. . . .

"Under the facts alleged, there can be no question . . . *the statute was tolled during the entire period when the respondents attempted to repair* the heating plant and assured the appellants that they would make the plant perform in accordance with its warranty [citation] and the appellants' complaint was timely filed." (225 Cal.App.2d at pp. 588-590, italics added.)[4]

In the present case, McKellar and Hutchison repaired the roof of the condominiums from January 1974 through at least April 1974. If we add these four months to the statutory period, it would still allow Cascade to bring an action in November of 1983.[5] Since the period of repair approximates four months, the statute of limitations period set forth by section 337.15 is extended a similar period of time. (*Ibid.*) Consequently, McKellar's and Hutchison's repair work in 1974 enabled Cascade's complaint,

---

[4] While *Mack* v. *Hugh W. Comstock Associates, supra,* 225 Cal.App.2d at page 586, interpreted the amenability of section 337.1 (a four-year period of limitation for patent defects) to tolling because of repairs, there is no reason this same tolling principle does not apply equally to section 337.15 and this latent defect problem.

[5] We base this extended limitation period upon the time when notice of substantial completion was filed (July 13, 1973) and the end of the 10-year period which follows thereafter (July 12, 1983). By tolling the limitation period four months, it will bring the time within which an action must be brought to November 12, 1983.

filed in August 1983, to come well within the 10-year period allowed by section 337.15. (*Ibid.*)

Thus, on these undisputed facts, we hold as a matter of law that the statutory period was tolled and the granting of summary judgment was error. (*Id.* at p. 585.) By reason of this conclusion, we need not reach Cascade's other contentions.

The trial court made a factual finding that there was no evidence of willful conduct or fraudulent concealment. However, in its motion for summary adjudication of issues, McKellar did not restrict the application of section 338 to Cascade's 11th cause of action, but rather sought summary judgment "for the entire action" under section 338. We cannot grant this broad request even under the trial court's factual finding.

## DISPOSITION

Summary judgment reversed. This case is remanded for further proceedings.

Kremer, P. J., and Work, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 3, 1987.