WERDEGAR, J. Dissenting.
I respectfully dissent. I cannot join the majority in rejecting application of equitable tolling to the 10-year limitation on actions for latent construction defects (Code Civ. Proc., § 337.15).[1] Accordingly, I would affirm the judgment of the Court of Appeal. Second, while I agree with the majority that in an appropriate case a defendant may be equitably estopped to assert that section 337.15’s 10-year limitation has expired, I disagree that there is no reasonable possibility plaintiffs in this case can allege sufficient facts to establish such an estoppel. Consequently, I would allow plaintiffs an opportunity to amend their complaint in order to correct any deficiencies the majority purports to identify.

Tolling

“Statutes of limitations are not so rigid as they are sometimes regarded.” (Bollinger v. National Fire Ins. Co. (1944) 25 Cal.2d 399, 411 [154 P.2d 399].) It is well established that statutes of limitation are not to be applied inflexibly where equity and justice favor the application of equitable tolling, and suspension of the running of a particular statute will not frustrate its purpose of preventing surprise through the revival of stale claims. (See Elkins v. Derby (1974) 12 Cal.3d 410, 417-419 [115 Cal.Rptr. 641, 525 P.2d 81].) For instance, “[t]he statute of limitations is tolled where one who has breached a warranty claims that the defect can be repaired and attempts to make repairs.” (Aced v. Hobbs-Sesack Plumbing Co. (1961) 55 Cal.2d 573, 585 [12 Cal.Rptr. 257, 360 P.2d 897] (Aced).) Another established application of the general principle—today repudiated by the majority—has been that, *389 “[i]n cases involving construction defects . . . the statute of limitations is tolled during each period the defendant attempts to repair the defect.” (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 684, p. 871.)
The majority argues that “the purpose of section 337.15, as revealed by its history, weighs against a judicially imposed rule that the 10-year limitations period set forth in this statute is tolled for repairs. On the other hand, countervailing policies of practicality and fairness do not compel such a rule.” (Maj. opn., ante, at pp. 378-379.) I disagree. As Justice Richardson long ago explained in a unanimous opinion for this court, “the equitable tolling doctrine fosters the policy of the law of this state which favors avoiding forfeitures and allowing good faith litigants their day in court.” (Addison v. State of California (1978) 21 Cal.3d 313, 320-321 [146 Cal.Rptr. 224, 578 P.2d 941] (Addison).)
As its opinion nowhere specifies the elements of equitable tolling, the majority leaves the inaccurate impression that, unless we in this case categorically bar that remedy in construction defect cases, it will appear by judicial “fiat” (maj. opn., ante, at p. 379) or happen automatically whenever “a potential defendant’s promises or attempts to repair the defect are pending” (id. at p. 383). The majority misdescribes the law. Courts do not enjoy unfettered discretion to toll a statute of limitations. Rather, “application of the doctrine of equitable tolling requires timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.” (Addison, supra, 21 Cal.3d at p. 319.)
According to the majority, “the plain language of section 337.15 suggests that the 10-year limitations period is not subject to extension for reasons not stated in the statute itself.” (Maj. opn., ante, at p. 373.) I discern no such suggestion. Section 337.15 does not mention tolling, equitable or otherwise. The omission is significant; had the Legislature meant to preclude equitable tolling, it easily could have said so, as it has in other statutes of limitation. (See §§ 340.5 [“no event” shall toll limit on actions against health care providers except those specified], 340.6 [same for attorney malpractice actions], 366.2, subd. (b) [limit on actions on liability of a deceased person “shall not be tolled or extended for any reason” except as specified in certain code sections].)
Thus, contrary to the majority, equitable tolling in this case is not inconsistent with the text of the statute. (See maj. opn., ante, at p. 371.) The majority in any event is not actually relying on section 337.15’s plain language, but, rather, on its perception of that statute’s “structure and tone” (maj. opn., ante, at p. 373), which the majority characterizes as “stentorian” (ibid.). Such observations are at best irrelevant, since, as the majority *390 concedes, the tolling remedy at issue “is a general equitable one which operates independently of the literal wording of the Code of Civil Procedure.” (Addison, supra, 21 Cal.3d at p. 318; see maj. opn., ante, at p. 367.)
The majority also advances a legislative intent argument, based on the Legislature’s asserted failure when enacting section 337.15 to provide an express repairs extension, despite knowing that case law had earlier “en-grafted a ‘tolling for repairs’ rule onto the four-year discovery-based limitations period for breach of a construction warranty” and its asserted “careful attention” to other (unspecified) issues raised by prior court decisions. (Maj. opn., ante, at p. 377.) But in California it “is established that the running of the statute of limitations may be suspended by causes not mentioned in the statute itself’ (Bollinger v. National Fire Ins. Co., supra, 25 Cal.2d at p. 411),[2] and the Legislature is presumed to have been aware of that principle when it enacted section 337.15 (People v. Seneca Ins. Co. (2003) 29 Cal.4th 954, 972 [129 Cal.Rptr.2d 842, 62 P.3d 81]).
Framing the legislative intent argument somewhat differently, the majority asserts the Legislature’s silence respecting equitable tolling when enacting section 337.15 bespeaks its intent to bar application of that long-established doctrine in this context. “We can rarely determine from the failure of the Legislature to pass a particular [provision] what the intent of the Legislature is with respect to existing law.” (Ingersoll v. Palmer (1987) 43 Cal.3d 1321, 1349 [241 Cal.Rptr. 42, 743 P.2d 1299].) For that reason, we “should not presume the Legislature intended ‘to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication ....’” (Juran v. Epstein (1994) 23 Cal.App.4th 882, 896 [28 Cal.Rptr.2d 588].)
The majority does not deny the Legislature has acquiesced for many years in Cascade Gardens Homeowners Assn. v. McKellar & Associates (1987) 194 Cal.App.3d 1252 [240 Cal.Rptr. 113] (Cascade Gardens) and Grange Debris Box & Wrecking Co. v. Superior Court (1993) 16 Cal.App.4th 1349 [20 Cal.Rptr.2d 515] (Grange Debris), cases confirming that courts may apply the doctrine of equitable tolling to section 337.15. (See Cascade Gardens, supra, at p. 1256; Grange Debris, supra, at p. 1360.) Sixteen years ago, Cascade Gardens held on the basis of “[c]lear authority” that “under certain circumstances” and where “principles of equity and justice . . . allow,” section 337.15 is subject to equitable tolling while repairs are undertaken. (Cascade Gardens, supra, at p. 1256, citing Aced, supra, 55 Cal.2d at p. 585, Mack v. Hugh W. Comstock Associates (1964) 225 Cal.App.2d 583, 589-590 [37 *391 Cal.Rptr.466] (Mack), and Southern Cal. Enterprises v. Walter & Co. (1947) 78 Cal.App.2d 750, 755 [178 P.2d 785] (Southern Cal. Enterprises).) As the majority concedes, the Legislature has never expressly disagreed with Cascade Gardens or taken any action to overrule or limit its holding. (See maj. opn., ante, at p. 381.) Accordingly, it would be reasonable for us to presume the Legislature is aware of the judicial construction and approves of it. (See People v. Williams (2001) 26 Cal.4th 779, 789 [111 Cal.Rptr.2d 114, 29 P.3d 197]; People v. Hallner (1954) 43 Cal.2d 715, 720 [277 P.2d 393].)
The majority, however, seeks to repudiate Cascade Gardens on grounds that three cases on which that court relied are inapposite because they were breach of warranty cases that predate the adoption of section 337.15. (Maj. opn., ante, at p. 372, discussing Aced, supra, 55 Cal.2d 573, Mack, supra, 225 Cal.App.2d 583, and Southern Cal. Enterprises, supra, 78 Cal.App.2d 750.) But that Aced, Mack, and Southern Cal. Enterprises were decided before section 337.15 was enacted is irrelevant, as Cascade Gardens relied on these cases not for any conclusion respecting section 337.15’s legislative history or wording, but solely as authority for the proposition that “repairs, such as those undertaken by [the defendants there] toll statutes of limitations as a matter of law” (Cascade Gardens, supra, 194 Cal.App.3d at p. 1256). The majority does not dispute that Aced, Mack, and Southern Cal. Enterprises so held.
The majority characterizes Cascade Gardens' authorities as “narrowly concerned with how to apply the limitations period for express or implied warranties” (maj. opn., ante, at p. 372), but that does not tell the whole story. While Cascade Gardens cited warranty cases, it did so not for peculiarly warranty-related principles, but, rather, as “cases involving [or discussing] construction defects, defective products, and other breaches of warranty [in which] the defendant attempts to repair the defect” (3 Witkin, Cal. Procedure, supra, Actions, § 684, p. 871). For example, the Mack opinion expressly addressed tolling of other “Code of Civil Procedure sections . . . relating to the tortious injury or damage to person or property . . . .” (Mack, supra, 225 Cal.App.2d at p. 589 [considering “the application of these statutes” and concluding “the proper one to apply” “was tolled during the entire period when the respondents attempted to repair the heating plant” involved in the case]; see also Cascade Gardens, supra, 194 Cal.App.3d at p. 1257, fn. 4 [analogizing Mack].) In Aced, although we cited several cases showing that construction contracts “ordinarily . . . give rise to an implied warranty” (Aced, supra, 55 Cal.2d at p. 582), we also noted the rule that “[t]he statute of limitations is tolled when one who has breached a warranty claims that the defect can be repaired and attempts to make repairs.” (Id. at p. 585.) And the Court of Appeal in Southern Cal. Enterprises actually was at pains to distinguish the case of the “ ‘typical warranty’ ” (Southern Cal. Enterprises, supra, 78 Cal.App.2d at p. 757) from the rule governing that case, which it *392 stated as: “ ‘if the seller promises that something shall happen or shall not happen to the goods within a specified future time, the promise though it may be called a warranty cannot be broken until that time has elapsed and until then the statute will not begin to run’ ” (id. at p. 758; see also id. at p. 757). In sum, the reasoning of Cascade Gardens and the warranty cases on which it relied—that promises to repair “extend the limitations periods for suits on construction defects” (maj. opn., ante, at p. 374, describing, inter alia, Aced and Mack)—is fully applicable in this case.
Pointing to section 337.15’s express exceptions, the majority invokes the maxim inclusio unius est exclusio alterius, apparently to suggest that, by including express statutory exceptions, the Legislature meant to displace established, generally applicable equitable exceptions. (See maj. opn., ante, at p. 373.) The majority does not develop the argument, perhaps realizing that “the [cited] maxim, while helpful in appropriate cases, ‘is no magical incantation, nor does it refer to an immutable rule.’ ” (California Fed. Savings & Loan Assn. v. City of Los Angeles (1995) 11 Cal.4th 342, 351 [45 Cal.Rptr.2d 279, 902 P.2d 297].) As the Court of Appeal pointed out, a recognized exception to the maxim arises when its application would conflict with well-established legal principles that the Legislature has not expressly repudiated. (Juran v. Epstein, supra, 23 Cal.App.4th at p. 896; see also Battuello v. Battuello (1998) 64 Cal.App.4th 842, 848 [75 Cal.Rptr.2d 548].) Accordingly, as the Court of Appeal concluded, the presence of enumerated exceptions in section 337.15 does not imply legislative intent to exclude equitable tolling.
Confirming trial courts’ discretionary access to equitable tolling, contrary to the majority, would not undermine the legislative purposes underlying section 337.15. (See maj. opn., ante, at pp. 373-377.) The majority’s lengthy recitation of section 337.15’s legislative history confirms “the statute is the result of general legislative concern about the economic effects of indefinite Tong tail’ defect liability on the construction industry” (maj. opn., ante, at p. 374), but it ultimately does not support the majority’s position. Plaintiffs argue persuasively that the Legislature’s primary aim when enacting section 337.15 was to eliminate generalized application of the “discovery rule” in construction defect litigation. Retention of equitable tolling would not undermine section 337.15’s impact on the perceived evils of that rule, because, as the majority acknowledges, a defendant who promises or undertakes repairs is generally able to control the time of any suit against it. (See maj. opn., ante, at p. 381.)
Ultimately, the majority can point to but one circumstance—that involving the so-called unsuspecting subcontractor—in which it can credibly claim an equitable tolling rule would undermine the statutory purpose. (See maj. opn., *393 ante, at p. 378.) The majority’s objection, however, depends on the questionable assumption that subcontractors responsible for defects generally will neither participate in nor be informed about repairs contractor defendants might promise or undertake. Common sense suggests that such a circumstance, if it ever occurs, is likely to be the exception. In any event, the majority does not persuade me this theoretical possibility should drive our construction of section 337.15.
As we long have understood, section 337.15 is an “ordinary statute of limitations, subject to the same rules ... as other statutes of limitations.” (Regents of University of California v. Hartford Acc. & Indem. Co. (1978) 21 Cal.3d 624, 642 [147 Cal.Rptr. 486, 581 P.2d 197].) One such generally applicable rule has been that statutes of limitations may be subject to equitable tolling during periods of repair. (Cascade Gardens, supra, 194 Cal.App.3d at p. 1256.) Given the Legislature’s long-standing acquiescence in Cascade Gardens and its progeny, the absence of an express reference to equitable tolling in section 337.15 affords no justification for barring that generally available remedy in construction defect cases. I conclude that equitable tolling of section 337.15 to protect homeowners from unscrupulous builders and to encourage amicable resolution of construction defect disputes should remain available in appropriate cases when plaintiffs can demonstrate the remedy’s required elements.

Estoppel

I agree with the majority that a defendant whose conduct induces plaintiffs to refrain from filing suit within the statutory period may, depending on the circumstances, be equitably estopped to assert that section 337.15’s 10-year limitation on latent construction defect actions has expired. (Maj. opn., ante, at p. 367.) The majority concludes that plaintiffs’ first amended complaint alleges insufficient facts to establish such an estoppel. (Id. at p. 385.) Assuming that conclusion is correct, I would allow plaintiffs an opportunity to amend their complaint.
The majority correctly notes that “plaintiffs did offer more specific estoppel allegations in a proposed second amended complaint. This proposed complaint made express claims that, from the time plaintiffs purchased their homes until expiration of the 10-year limitations period, defendants engaged in a pattern of falsely promising repairs, or making sham repairs they knew would fail, and then refused to respond further once the 10-year period had passed, all with the purpose and effect of inducing plaintiffs to forbear suing within the statutory time.” (Maj. opn., ante, at p. 386.) “It is axiomatic that if there is a reasonable possibility that a defect in the complaint can be cured by amendment or that the pleading liberally construed can state a cause *394 of action, a demurrer should not be sustained without leave to amend.” (Minsky v. City of Los Angeles (1974) 11 Cal.3d 113, 118 [113 Cal.Rptr. 102, 520 P.2d 726].)[3] The majority acknowledges this axiom (see maj. opn., ante, at p. 386), but fails to apply it.
Conceding that plaintiffs’ proposed allegations may be “technically sufficient to establish an estoppel,” the majority nevertheless denies plaintiffs that remedy, partly on the ground that plaintiffs’ belated presentation of the proposed second amended complaint gives rise to doubt about the credibility of its allegations. (Maj. opn., ante, at p. 386.) But elsewhere the majority acknowledges that plaintiffs have urged “at all stages that if their complaint is deficient, but could be remedied by additional factual allegations, a chance should be afforded to assert such facts.” (Ibid., italics added.)
The record contains a declaration, submitted to the superior court by one of plaintiffs’ counsel, stating that only five days after defendants’ demurrer was granted without leave to amend did counsel become aware, through conversations with another attorney, of the facts plaintiffs proposed to allege in their second amended complaint. Moreover, we previously have stated, in a case where “the defense of estoppel set out in the amendment was known for a considerable time before the trial,” that the fact “ ‘the new matter set up by the amendment was well known to the [party] when he filed his original [pleading] was no good reason why he should not have been permitted to amend.’ ” (Tolbard v. Cline (1919) 180 Cal. 240, 245 [180 P. 610]; see also 49A Cal.Jur.3d (2002) Pleading, § 224, p. 371.) The majority on the other hand cites no authority for its apparent implication that plaintiffs’ failure to supply a reason why the second amended complaint was not “presented sooner” (maj. opn., ante, at p. 387) is grounds for denying them an opportunity to amend their complaint, nor do I know of any such authority. To the contrary, “[a]ny judge, at any time before or after commencement of trial, in the furtherance of justice, . . . may allow the amendment of any pleading . . . .” (§ 576.)
The majority also professes doubt about the credibility of the new allegations for the reason that, when plaintiffs’ counsel was asked at oral argument what additional facts, not included in the first amended complaint, could be asserted to support a theory of equitable estoppel, he responded that “repairs promised or attempted by defendants at any time during the 10-year period gave rise, as a matter of law, to a form of implicit reliance by plaintiffs,” thus reiterating a theory of equitable tolling, rather than specifically referring us to *395 the claims set forth in the proposed second amended complaint. (Maj. opn., ante, at p. 387.) The majority concludes that this omission and the proposed amendment’s timing “negate any inference that these new assertions had a substantial basis in fact.” (Id. at p. 386.) The conclusion does not follow. After all, the majority does not claim that plaintiffs abandoned or repudiated the allegations of the proposed second amended complaint, nor, indeed, did plaintiffs do so.
I am aware of no requirement that an issue or position that has been briefed before this court must be reiterated at oral argument in order to be preserved, nor of any principle that counsel who is nonresponsive to the court’s question concerning a position is deemed to have abandoned that position. In addressing the topic of reliance before us, plaintiffs certainly were entitled to argue implicit reliance and even to reiterate their tolling theory, without being deemed to abandon the alternative, and perfectly consistent, position respecting amendment that they have urged at all stages of this litigation—viz., “that if their complaint is deficient, but could be remedied by additional factual allegations, a chance should be afforded to assert such facts.” (Maj. opn., ante, at p. 386.) In accordance with our liberal rules respecting amendment of the pleadings (see, e.g., §§ 473, 576), I would afford plaintiffs that opportunity.
For the foregoing reasons, I dissent.
Kennard, J., concurred.
On August 27, 2003, the opinion was modified to read as printed above.

 All further statutory references are to the Code of Civil Procedure.

 The majority inferentially acknowledges the point in recognizing the possibility that “section 337.15 is subject to the several separate statutes [not mentioned in section 337.15] that specify when certain limitations periods will be tolled.” (Maj. opn., ante, at p. 383, fn. 17.)

 As the majority concedes, the trial court found there was a possibility that amendment could cure any factual deficiencies in plaintiffs’ estoppel allegations. (See maj. opn., ante, at p. 385.) The majority also concedes amendment “might cure” any factual deficiencies in plaintiffs’ allegations respecting equitable tolling. (Id. at p. 368.)